2012 COA 205

**In re the MARRIAGE OF James H. NELSON, Appellant,**

**and**

**Gricela G. Nelson, Appellee.**

**No. 11CA2272.**

Colorado Court of Appeals, Div. VI.

Nov. 21, 2012.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2012.

Mark A. Dedrickson, P.C., Mark A. Dedrickson, Denver, Colorado, for Appellant.

Pitler and Associates, P.C., Robert L. Pitler, Kristen M. McLaughlin, Aurora, Colorado, for Appellee.

Opinion by Judge NEY.*

¶1 In this post-dissolution of marriage proceeding, James H. Nelson (husband) appeals from the district court's order extending the duration of maintenance payable to Gricela G. Nelson (wife). We dismiss the appeal in part and affirm.

## I. Background

¶2 Commencing in November 2004, husband was ordered to pay wife $1932 in monthly maintenance for five years. A few days after the five years expired, wife moved to modify maintenance, citing an inability to continue to be employed due to illness.

¶3 Almost two years later, the district court held a hearing on wife's motion. At the conclusion of the hearing, wife requested an award of attorney fees under section 14–10–119, C.R.S.2012. Husband objected that he had had no prior notice of the request.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2012.

The trial court expressed that it was "not, as part of [its] findings and orders right now, going to order attorney's fees," and it suggested that wife should submit a separate motion for fees to give husband an opportunity to respond. The court then delayed entry of its order pending proposed findings from the parties.

¶ 4 Shortly thereafter, wife moved for attorney fees under section 14–10–119. Husband again objected, and he sought fees and costs under section 13–17–102, C.R.S.2012, arguing wife's motion was frivolous, groundless, and vexatious.

¶ 5 One month later, the district court entered its order granting wife's motion to modify support. It reinstated the original award of maintenance ($1932 per month), until the death of either party, wife's remarriage, or her sixty-fifth birthday. It also made the order retroactive to the filing date, finding that husband owed wife an additional $40, 572 for maintenance accruing from November 2009.

¶ 6 Husband's appeal followed.

¶ 7 The district court has not yet ruled on the motions related to attorney fees.

## II. Jurisdiction

¶ 8 At the outset, we address our jurisdiction over this appeal.

¶ 9 Following briefing, this division requested supplemental responses from the parties addressing the applicability of *In re Marriage of Hill*, 166 P.3d 269, 272 (Colo. App.2007), to post-decree modification of maintenance proceedings. Specifically, we ordered the parties to address whether the principle announced in *Hill* deprived us of jurisdiction over husband's appeal, given wife's outstanding motion for attorney fees. Both parties argued that *Hill* did not deprive us of jurisdiction of this appeal. Upon consideration of those responses, and the applicable legal authorities, we agree that we have jurisdiction.

¶ 10 A judgment is final and therefore appealable if it disposes of the entire litigation on the merits, leaving nothing for the court to do except to execute judgment.

*See Civil Service Comm'n v. Carney*, 97 P.3d 961, 967 (Colo.2004). When an order ends litigation on the merits, but an issue remains to be decided, the remaining issue does not prevent finality when its resolution will not change or moot the determinations contained in the order. *Baldwin v. Bright Mortgage Co.*, 757 P.2d 1072, 1073 (Colo.1988).

¶ 11 In *Hill*, another division of this court resolved the finality of permanent orders in a dissolution of marriage proceeding. That division decided that a district court at permanent orders must address several intertwined issues, including parental responsibilities, disposition of property, spousal support, child support, and attorney fees, which if awarded, must be reduced to a sum certain. 166 P.3d at 272. Unless and until the district court fully resolves each of those intertwined issues, including attorney fees, the permanent orders are not final or appealable. *Id.*

¶ 12 The rationale underlying *Hill* is that payment of attorney fees under section 14–10–119 is an "integral and substantive part of equitably disposing of the parties' assets and liabilities and dissolving the marriage." *Hill*, 166 P.3d at 272.

¶ 13 However, when considering a post-decree motion to modify, the district court is no longer concerned with "equitably disposing of the parties' assets and liabilities." *See id.* At the time of a modification, the assets and liabilities have already been divided, and the court has no continuing duty to dissolve the marriage. Thus, the only issue before the court is whether there has been "a showing of changed circumstances so substantial and continuing as to make [those] terms unfair." § 14–10–122(1)(a), C.R.S.2012; *see also In re Marriage of Aldinger*, 813 P.2d 836, 840 (Colo.App.1991) ("A motion to modify is not considered under the same standard as an original award. . . .").

¶ 14 Therefore, a district court could fully resolve the merits of a motion to modify maintenance by looking solely at these limited criteria. § 14–10–122(1)(a); *Aldinger*, 813 P.2d at 840 (motions to modify must be considered under a more limited standard than an original award, because otherwise section 14–10–122 would have no meaning and parties would file motions to modify each time

there is a change in their earning ability or needs).

■ ¶ 15 In contrast, an attorney fee request entails a much broader consideration. A district court resolving a fee request under section 14–10–119 must consider the parties' relative financial status, which requires consideration of their relative incomes, assets, and liabilities. *See In re Marriage of Aldrich*, 945 P.2d 1370, 1378 (Colo.1997).

■ ¶ 16 Resolution of both motions may involve the consideration of the same evidence. *See In re Marriage of Udis*, 780 P.2d 499, 503 (Colo.1989); *In re Marriage of Weibel*, 965 P.2d 126, 129 (Colo.App.1998). However, the resolution of an attorney fee request will not change or moot the determination of whether a substantial and continuing change justifies modification of the maintenance award. *See Baldwin*, 757 P.2d at 1073. Therefore, an attorney fee request sought in a post-decree modification motion is ancillary to the motion itself; it is no longer "an integral and substantive part" of the proceeding.

¶ 17 While it may promote judicial economy to resolve the issues simultaneously given the similarity in evidence, *see Hill*, 166 P.3d at 272 (commenting that it promotes judicial economy to review all matters incident to a dissolution of marriage), we think that decision is best left to the district court in light of the facts and circumstances of each case. And where, as here, the district court decides to resolve the attorney fee request independently of the motion to modify maintenance, such a decision should not prohibit husband's timely appeal from the modification order that has been fully resolved on the merits.

■ ¶ 18 Accordingly, we decline to extend *Hill* to post-decree modification of maintenance cases. We conclude instead that an order fully resolving a motion to modify maintenance is a final appealable order, notwithstanding an unresolved request for attorney fees.

¶ 19 Therefore, here, we have jurisdiction over husband's appeal.

### III. Permission to File

■ ¶ 20 In light of this conclusion, we next address husband's contention that the district court erred when it granted wife leave to file a post-hearing motion for attorney fees under section 14–10–119. This court lacks jurisdiction to consider this contention because there is no final appealable order as to wife's motion for fees. In fact, there is *no* order for us to review, as the district court has not yet ruled on wife's motion. Thus, the issue is not properly before us on appeal. *See* C.A.R. 4(a) (appeals may only be taken as to judgments, decrees, or orders as set forth in C.R.C.P. 58); C.R.C.P. 58(a) (a judgment or order is entered when it is reduced to writing, signed, and dated by the court). We therefore dismiss this part of the appeal. *See, e.g., Rogers v. Tovrea*, 484 P.2d 1246, 1246 (Colo.App. 1971) (not published pursuant to C.A.R. 35(f)) (order granting motion to set aside judgment and file an amended answer brief is not a final, appealable order; once judgment enters, the propriety of the order vacating the original judgment can be reviewed on appeal).

### IV. Income

■ ¶ 21 Husband next contends the district court erred when it determined his income. In particular, he argues that section 14–10–114(2)(b)(IV)(A), C.R.S.2012, requires that the court determine a party's gross income for maintenance in the same way it determines gross income for child support. We disagree.

¶ 22 Section 14–10–114(2)(b)(IV)(A) provides that the term "income" shall have the meaning set forth in section 14–10–115(3), C.R.S.2012. Section 14–10–115(3), in turn, provides that a party's gross income must be determined according to the guidelines in section 14–10–115(5), C.R.S.2012. As pertinent here, the district court's determination of husband's income under the child support guidelines would have required the court to exclude husband's income from his second full-time job. *See* § 14–10–115(5)(a)(II)(C), C.R.S.2012 (gross income does not include income from additional jobs that result in the employment of the obligor more than forty

hours per week or more than what would otherwise be considered to be full-time employment).

¶ 23 However, unlike child support, which is determined by a precise mathematical equation using the parents' incomes, maintenance is determined by a discretionary balancing of factors. *See In re Marriage of Sim,* 939 P.2d 504, 506–07 (Colo.App.1997). Importantly, section 14–10–114(4), C.R.S. 2012, which dictates how permanent maintenance shall be awarded, does not use the term "income." Instead, that section requires the court to consider the "ability [of the party from whom maintenance is sought] to be able to meet his or her needs independently." § 14–10–114(4)(a), C.R.S.2012. Thus, where, as here, a court is reviewing a modification of permanent maintenance, an obligor-spouse's income is relevant only to the extent it is indicative of the spouse's ability to meet his or her own needs while also meeting the needs of the payee-spouse. *See Sim,* 939 P.2d at 506–07.

¶ 24 We conclude that the district court's consideration of husband's income from his second job did not run afoul of section 14–10–114(2)(b)(IV)(A). Accordingly, we decline to require a recalculation of husband's income under the child support guidelines.

## V. Substantial and Continuing Change

¶ 25 Husband next contends that the court's conclusion that wife established a substantial and continuing change of circumstances was unsupported by the evidence. We disagree.

¶ 26 As explained above, maintenance may be modified only upon a showing of changed circumstances so substantial and continuing as to make the existing terms unfair. § 14–10–122(1)(a). In making this determination the court is required to examine all circumstances pertinent to awarding maintenance under section 14–10–114, C.R.S. 2012. *In re Marriage of DaFoe,* 677 P.2d 426, 427–28 (Colo.App.1983).

¶ 27 The determination whether circumstances have changed is within the sound discretion of the district court based on the facts presented and, absent an abuse of that discretion, the court's ruling will not be disturbed on review. Further, on appeal, we must construe the evidence in the light most favorable to the prevailing party. *In re Marriage of Perlmutter,* 772 P.2d 621, 622 (Colo.1989).

¶ 28 Once the movant shows the requisite changed circumstances, it is within the district court's discretion to modify the decree to meet the needs and abilities of the parties. *In re Marriage of Ward,* 740 P.2d 18, 20 (Colo.1987).

¶ 29 Here, wife testified that she had held several jobs since the entry of the original award for maintenance, and that her earnings never exceeded $20,000 for any given job. She testified that because of her age and lack of skill, she was only able to obtain entry-level employment, and that she had been let go from a number of jobs.

¶ 30 In addition, wife testified that since the original order, she had been diagnosed with a number of illnesses, including fibromyalgia. She stated that the fibromyalgia caused constant, major pain throughout her body, gave her sleeping problems and stomach problems, limited her walking, and made her "fogg[y]." She testified that when the illness "flare[d]," she had to take time off from work. Wife testified that the fibromyalgia made it hard for her to maintain steady employment, and she believed that the illness was getting worse.

¶ 31 Supporting wife's testimony was the testimony of a rheumatologist and internist who specialized in the practice of arthritis and autoimmune conditions. He testified that fibromyalgia is a neurologic disorder in which patients feel pain in areas where there is no actual physical damage. He testified that he diagnosed wife with fibromyalgia after an exam and history in which she showed the presentation of the disease. He stated that fibromyalgia, in general, made working difficult and could lead to employment issues, because people with fibromyalgia have difficulty with repetitive tasks and their pain could get so bad "they can't do anything." He stated that more than sixty-five percent of fibromyalgia patients did not work, particularly in physical jobs. He testified that wife

would likely have similar difficulty holding a job, because her symptoms affected her ability to sleep and work. He opined that while wife's symptoms "wax[ed] and wane[d]," they were chronic and he did not expect her to get better.

¶ 32 Other testimony at the hearing showed that husband's income had increased since the time of the original maintenance award because husband was now working a second full-time job. Husband testified, however, that he only took the second job because he needed to pay the original award of maintenance and that, at his age, he did not want to continue to work two jobs. Husband also presented the testimony of a vocational evaluator who opined that wife had the ability to earn more income. Finally, husband elicited testimony that, during the time wife claimed her physical symptoms disrupted her ability to work, she was participating in a bowling league.

¶ 33 In reviewing all the evidence, the district court found that wife had established a deterioration of her medical condition not diagnosed at the time of the original award of maintenance that made that prior award unfair. The court was expressly persuaded in this regard by wife's doctor's testimony regarding wife's pain and difficulties in functioning. The district court also made findings regarding the increase in husband's income, noting that his current income did not include his military pay or benefits.

¶ 34 On these findings, the district court determined that wife had met her burden to establish a substantial and continuing change of circumstances warranting a continuation of her maintenance payment. It thus ordered husband to continue paying wife's maintenance until the death of either party, the remarriage of wife, or wife's reaching sixty-five years of age.

¶ 35 We find no abuse of discretion in this determination. *See Perlmutter,* 772 P.2d at 622; Ward, 740 P.2d at 20; see also *In re Marriage of Caufman,* 829 P.2d 501, 505 (Colo.App.1992) (when a district court's order regarding maintenance is supported by competent evidence, it should not be disturbed on review). While there is evidence in the record that could have supported a different conclusion, we will not substitute our judgment for that of the district court. *See Gebhardt v. Gebhardt,* 198 Colo. 28, 30, 595 P.2d 1048, 1050 (1979) (an appellate court cannot substitute itself as a finder of fact, and factual findings of the district court will not be disturbed on appeal unless clearly erroneous and not supported by the record).

¶ 36 We are cognizant that husband argues wife's illness is not a "changed" circumstance, as she presented evidence of her fibromyalgia at the permanent orders hearing. However, on the record before us we cannot conclude, as husband urges, that the court must necessarily have considered this information when entering permanent orders. Rather, the record establishes only that wife's fibromyalgia was mentioned in the context of her use of husband's military health insurance. There is no indication in the record, either express or implied, that at the time of the original award, the parties or the court considered the effect the illness could have on wife or on her ability to work.

¶ 37 We are also cognizant of husband's argument that his increased income is not a sufficient change in circumstances warranting modification. However, because husband's income was only one factor in the district court's overall determination, we perceive no abuse of discretion. *See DaFoe,* 677 P.2d at 427–28; *see also Udis,* 780 P.2d at 503 (whether a modification of maintenance is appropriate requires examination of *all relevant circumstances* of both parties); *cf. In re Marriage of Bowles,* 916 P.2d 615, 618 (Colo.App.1995) (mere increases or decreases in earnings do not require the conclusion that the amount of maintenance has become unconscionable).

¶ 38 We therefore decline to disturb the district court's order modifying husband's maintenance obligation to wife.

## VI. Retroactivity

¶ 39 Husband also contends that the court abused its discretion by making the maintenance modification retroactive to the date wife filed her motion. Again, we disagree.

¶ 40 Generally, a modification of maintenance is effective as of the date of the filing of the motion, unless the court finds that it would cause undue hardship or substantial injustice. § 14–10–122(1)(d), C.R.S. 2012. The district court has discretion to determine whether to modify maintenance as of the date the motion was filed. *See DaFoe,* 677 P.2d at 427–28; *In re Marriage of Walsh,* 44 Colo.App. 502, 503, 614 P.2d 913, 914 (1980).

¶ 41 Here, there was no specific finding that a retroactive application would create a hardship for husband. However, the district court's findings that husband's income had increased, and its notation that his gross income did not include his military pay or benefits, support its apparent conclusion that husband has the ability to pay the retroactive maintenance. *See Foster v. Phillips,* 6 P.3d 791, 796 (Colo.App.1999) (while it is better practice to make express findings, they may be implicit in a court's ruling); *Catron v. Catron,* 40 Colo.App. 476, 479, 577 P.2d 322, 324 (1978) (implied findings are sufficient). Accordingly, we do not disturb the district court's decision to order retroactive payments.

## VII. Attorney Fees on Appeal

¶ 42 We decline to consider husband's request for attorney fees under section 13–17–102, in having to respond to wife's post-trial motion. This request is currently pending before the district court. *See Estate of Stevenson v. Hollywood Bar & Cafe, Inc.,* 832 P.2d 718, 721 n. 5 (Colo.1992) ("Arguments never presented to, considered *or ruled upon* by a trial court may not be raised for the first time on appeal." (emphasis added)).

¶ 43 We also decline to consider wife's request for appellate attorney fees under section 14–10–119. Instead, wife may raise the issue in the district court. *See Hill,* 166 P.3d at 273; *see also In re Marriage of Chalat,* 112 P.3d 47, 59 (Colo.2005) (entrusting to the district court "the determination of entitlement to or the amount of any attorney fees" and costs on remand (quoting C.A.R. 39.5)).

¶ 44 The appeal is dismissed as to wife's post-hearing motion for attorney fees, and the order modifying maintenance is affirmed.

Judge ROMÁN concurs.

Judge BERNARD dissents.

Judge BERNARD dissenting.

¶ 45 I respectfully dissent. I do not think that the trial court's order granting wife's motion to modify the maintenance award is final because wife's motion for attorney fees has not been resolved. I would, therefore, dismiss this appeal without prejudice.

## I. Background

¶ 46 The trial court dissolved husband's and wife's marriage in November 2004. It issued permanent orders that included a monthly maintenance award to wife that would continue for five years. The permanent orders stated that the court retained jurisdiction over this case "as provided by Colorado law."

¶ 47 In 2009, wife filed a motion that asked the trial court to modify the maintenance award. She alleged, among other things, that circumstances had changed so substantially since the original maintenance award that the original award had become unfair. In September 2011, the trial court granted this motion. The court decided to make the modified maintenance award retroactive to the date when the motion to modify was filed, and prospective to the date of husband's or wife's death, or to the date of wife's sixty-fifth birthday.

¶ 48 In reaching its decision, the trial court made a series of findings of fact, including several involving the permanent orders. The court found that the permanent orders (1) did not award any of husband's retirement pay or benefits to wife; (2) did not award any marital property to wife; (3) required wife to pay a specified sum in marital debt; and (4) mandated that husband pay the parties' tax obligation.

¶ 49 The court also found that it had to "consider the total gross monthly income of [husband] to do equity in this matter"; and that "the changes in [husband's] income,

combined with the deterioration in [wife's] medical condition, are so substantial and continuing as to make the original maintenance award unfair."

¶ 50 Near the end of the hearing on wife's motion to modify the original maintenance award, wife asked for attorney fees. Husband objected. The court then stated that, although it would not make a decision whether it would award attorney fees at that hearing, it would allow "[c]ounsel for both sides [to] submit motions ... in relation to attorney's fees" and to respond to such motions.

¶ 51 Wife then filed a motion for attorney fees, relying on section 14–10–119, C.R.S. 2012, and C.R.C.P. 121 section 1–22. The motion was accompanied by counsel's affidavit, an itemized summary in support of the affidavit, and a bill of costs.

¶ 52 Husband filed a written objection and response to wife's request for attorney fees, adding his own request for attorney fees under section 13–17–102, C.R.S.2012, and C.R.C.P. 11. Wife filed a written response to husband's objection, and she likewise requested that she be awarded attorney fees under section 13–17–102 and C.R.C.P. 11.

¶ 53 The trial court has not ruled on wife's or husband's motion for attorney fees. As a result, we asked the parties to provide us with supplemental briefs on the issue whether we have jurisdiction over this appeal. Both parties argued in those briefs that we have jurisdiction. We are not, however, bound by their common position because parties cannot confer jurisdiction on this court by their consent. *See Arevalo v. Colo. Dep't of Human Servs.*, 72 P.3d 436, 437 (Colo.App. 2003).

## II. Analysis

¶ 54 Under section 14–10–114(3), C.R.S. 2012, a trial court may enter an order for maintenance at the time of permanent orders if it finds that the spouse requesting maintenance

(a) [l]acks sufficient property, including marital property apportioned to him or her, to provide for his or her reasonable needs; and

(b) [i]s unable to support himself or herself through appropriate employment.

¶ 55 "Under this statute[,] the propriety of an award of maintenance depends upon the inadequacy of the property and earning capacity possessed by the party seeking the award." *In re Marriage of Jones*, 627 P.2d 248, 252 (Colo.1981). It is only after the property has been divided that a trial court can "determine, by application of the statutory standards, whether maintenance is necessary to provide for the reasonable needs of one of the parties." *Id.* at 253. A court may modify a maintenance award if the proponent of the modification establishes that there are "changed circumstances so substantial and continuing as to make the terms unfair." § 14–10–122(1)(a), C.R.S.2012. However, absent certain exceptions that do not apply here, a final property division cannot be modified. In other words, "in equitably adjusting the financial obligations of the parties based upon changed circumstances, the property division remains fixed and requisite adjustments to achieve fairness are to be made in the maintenance provisions of [the] decree." *In re Marriage of Jones*, 627 P.2d at 253.

¶ 56 Wife's motion for attorney fees relies on section 14–10–119. As pertinent here, that statute states that a court may, "from time to time, after considering the financial resources of both parties, ... order a party to pay a reasonable amount for the cost to the other party of maintaining ... any proceeding under this article and for attorney's fees."

¶ 57 The purposes for awarding attorney fees in a marriage dissolution case are "to equalize the parties' financial positions," *In re Marriage of Anthony–Guillar*, 207 P.3d 934, 944 (Colo.App.2009), and "to ensure that neither party suffers undue economic hardship as a result of the proceedings," *In re Marriage of Aldrich*, 945 P.2d 1370, 1377 (Colo.1997). To achieve these equitable purposes, a court "must consider the relative financial status of each party by making findings concerning their relative incomes, assets, and liabilities." *In re Marriage of Aldrich*, 945 P.2d at 1378. As a result, "the issues of property division, maintenance, and attorney fees are inextricably intertwined."

*In re Marriage of Antuna,* 8 P.3d 589, 595 (Colo.App.2000).

¶ 58 This interconnection was the focus of the division's holding in *In re Marriage of Hill,* 166 P.3d 269, 272 (Colo.App.2007):

The apportionment of attorney fees under § 14–10–119 is fundamentally different from statutory and contractual fee-shifting provisions that premise the award of attorney fees on the merits of the claims and a determination of who prevailed in the action. Therefore, we conclude that the apportionment of attorney fees in a dissolution action is an integral and substantive part of equitably disposing of the parties' assets and liabilities and dissolving the marriage. As a result, the permanent orders here are not final because they do not resolve wife's request for the apportionment of attorney fees and costs and do not reduce the amount to be paid, if any, to a sum certain.

¶ 59 The concept of the inextricable interconnection of property division, maintenance, and attorney fees applies even when the propriety of the property division is not in question on appeal. In *In re Marriage of Jones,* 627 P.2d at 252, our supreme court held that "when neither party contests a trial court's division of property[,] it is not necessary that the court be able to reconsider the property division in order to correct error in the provisions for maintenance and attorney's fees." Further, "[t]he requirement that the court consider the parties' financial resources does not mandate that the property award be contested in order to challenge the attorney's fee award as an abuse of discretion." *Id.* at 253. These holdings led the supreme court to conclude further that, once it decided to remand the case to the trial court for specific findings and a potential reconsideration of a maintenance award, the attorney fees award should also be remanded for reconsideration "[b]ecause the propriety of an award of attorney's fees is to be judged in light of the financial resources of the parties." *Id.* at 254.

¶ 60 This appeal concerns a modification of a maintenance award, and not an appeal from permanent orders. But the preceding authority convinces me that the order in this case is not final because wife's request for attorney fees under section 14–10–119 has not yet been decided by the trial court.

¶ 61 I see no reason why the inextricable interconnection of property division, maintenance, and attorney fees, *see In re Marriage of Antuna,* 8 P.3d at 595, unravels merely because a trial court hearing involves only a modification of a maintenance award under section 14–10–122(1)(a) and an award of attorney fees under section 14–10–119. I read In re Marriage of Jones, 627 P.2d at 252–54, as making clear that taking the issue of the propriety of the property division off the table does not unravel the inextricable interconnection between the issues of the propriety of a maintenance award and the propriety of an award of attorney fees under section 14–10–119.

¶ 62 This case is, in my view, a small and logical analytical step beyond *In re Marriage of Jones.* By necessity, the analysis of whether circumstances have changed in such a substantial and continuing way as to make the initial maintenance award unfair, *see* § 14–10–122(1)(a), requires the trial court to consider all relevant circumstances of the parties, including their relative economic circumstances, *see In re Marriage of Udis,* 780 P.2d 499, 503 (Colo.1989); *In re Marriage of Weibel,* 965 P.2d 126, 129 (Colo.App.1998); *In re Marriage of Aldinger,* 813 P.2d 836, 840 (Colo.App.1991). (I take no position on whether the trial court erred when it granted wife's motion to modify the maintenance award. However, I note that the court's order here considered a variety of economic circumstances, such as wife's economic situation, the effect of the property division in the permanent orders on her situation, the deterioration in her medical condition, and husband's gross income.)

¶ 63 Likewise, the analysis required to award attorney fees under section 14–10–119 focuses on the relative financial status of each party, *see In re Marriage of Aldrich,* 945 P.2d at 1378, and it is fundamentally different from the analysis required to award attorney fees when attorney fees are treated like costs, such as when they are awarded based on statutory or contractual fee-shifting provisions. *See In re Marriage of Hill,* 166

P.3d at 272; *see also* C.R.C.P. 121 § 122 cmt. 2 ("Unless otherwise ordered by the court, attorney fees under C.R.S. 14–10–119 should be heard at the time of the hearing on the motion or proceeding for which they are requested."); *cf. Ferrell v. Glenwood Brokers, Ltd.,* 848 P.2d 936, 941 (Colo.1993) ("[I]f attorney fees are 'damages,' then the merits of a lawsuit are not appealable until the amount of fees has been set.").

¶ 64 Therefore, relying on *In re Marriage of Jones,* I would hold that the question whether wife should be awarded attorney fees under section 14–10–119 must be resolved before we consider husband's appeal concerning the trial court's order modifying the maintenance award "[b]ecause the propriety of an award of attorney's fees is to be judged in light of the financial resources of the parties." *Id.* at 254.

¶ 65 It is my position that the order granting wife's request to modify the maintenance is not final because the trial court here has not yet resolved wife's request for attorney fees under section 14–10–119. I would, as a result, dismiss this appeal without prejudice because I do not believe that we have jurisdiction to resolve it. *See In re Marriage of Hill,* 166 P.3d at 272–73.